## INTERNATIONAL UNION OF ELEVATOR CONSTRUCTORS and Local 34 International Union of Elevator Constructors, Plaintiffs-Appellants,

v.

## The HOME ELEVATOR COMPANY, INC., Defendant-Appellee.

### No. 85–2405.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 15, 1986.

Decided Aug. 12, 1986.

Francis J. Martorana, O'Donoghue & O'Donoghue, Washington, D.C., for plaintiffs-appellants.

James S. Downing, Peterson Haramy Cline & Shoup, Indianapolis, Ind., for defendant-appellee.

Before HARLINGTON WOOD, JR., EASTERBROOK and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a), grants jurisdiction to the federal courts over "suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce...." Pursuant to section 301, the International Union of Elevator Constructors and Local 34 of the International Union of Elevator Constructors (Union) filed suit in the district court alleging that Home Elevator Company (Company) had breached the collective-bargaining agreement. Relying on *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), the district court applied the six-month statute of limitations contained in section 10(b) of the National Labor Relations Act (NLRA), 29 U.S.C. § 160(b), to bar the section 301 cause of action. In following this course, the district court departed from the general practice, established in *International Union, United Automobile Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966), of borrowing the most analogous state limitations period.

We do not believe that the Supreme Court's holding in *DelCostello* justified a departure in this case from the general approach of *Hoosier Cardinal*. We hold, therefore, that the district court erred by not applying the most analogous state limitations period to the section 301 suit in this case. We reverse and remand this case to the district court for application of the most analogous state statute of limitations, the Indiana two-year statute of limitations

governing all actions relating to the terms, conditions and privileges of employment except actions based upon a written contract. Ind.Code § 34–1–2–1.5.

## I

### FACTS

In November, 1977, the Union entered into a collective-bargaining agreement with the Company. The agreement established the terms and conditions of employment including the wage rate and all other wage related payments. It also contained an arbitration clause to resolve all differences and disputes regarding the application and construction of the agreement. The contract expired in July 1982. However, the parties continued to bargain until they reached impass in March 1983. The Union claims that, during these negotiations, it first discovered that the Company had not paid the employees the rate established by the agreement. Rather than submitting the dispute to arbitration, the Union waited until August 1, 1984 and then filed suit under section 301 of the LMRA.[1] In its complaint, the Union alleged that the Company had violated the collective-bargaining agreement, and sought specific performance and damages for breach of contract. It did not petition to compel arbitration.

On July 12, 1985, the district court granted the defendant's motion to dismiss. The district court decided that the six-month statute of limitations in section 10(b) of the NLRA[2] was the period most conducive to federal labor policy and most applicable to the section 301 suit in this case. *International Union of Elevator Constructors v. Home Elevator Co.*, 613 F.Supp. 253, 255 (S.D.Ind.1985). Application of the federal statute of limitations, the court concluded, was also consistent with a desire to establish a uniform limitations period for all section 301 suits. *Id.* at 256. The district court concluded that *Hoosier Cardinal* did not control because, unlike the situation in this case, the agreement in *Hoosier Cardinal* did not contain an arbitration clause. *Id.* at 255. However, on appeal, the Union argues that the facts in this case are not materially different from those in *Hoosier Cardinal*, and that therefore the district court should have applied the state statute of limitations most analogous to this section 301 claim.

## II

### DISCUSSION

#### 1) *General Principles*

Many federal statutes, while providing a federal forum for litigation, contain no specific statute of limitations. Therefore, federal courts, faced with this lapse in the legislative process, have been forced to fill the gap left by the Congress.[3] Our task is

---

1. The Union never submitted the dispute to arbitration and the company has never sought to compel arbitration of this issue. It appears from the record that the parties did not enter into another contract after the expiration in July 1982 of the contract in issue here.

2. In 29 U.S.C. § 160(b) Congress established a six-month statute of limitations for filing an unfair labor practice complaint with the National Labor Relations Board:

   (b) Whenever it is charged that any person has engaged in or is engaging in any such unfair labor practice, the Board, or any agent or agency designated by the Board for such purposes, shall have power to issue and cause to be served upon such person a complaint stating the charges in that respect, and containing a notice of hearing before the Board or a member thereof, or before a designated agent or agency, at a place therein fixed, not

   less than five days after the serving of said complaint: *Provided,* That no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board. . . .

3. The task we face in this case is not one which the judiciary has performed with any degree of comfort. Fixing statutes of limitations is a legislative—not a judicial—function and it is indeed difficult to justify the expenditure of already scarce judicial resources on an issue which could be legislatively resolved in a sentence. *See International Union, United Automobile Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696, 702–03, 86 S.Ct. 1107, 1111–12, 16 L.Ed.2d 192 (1966). *See generally Preuit & Mauldin v. Jones,* —— U.S. ——, 106 S.Ct. 893, 895 n. 3, 88 L.Ed.2d 926 (1986) (White, J., dissenting); *Smith v. Evening News Assn.*, 371 U.S. 195, 203, 83 S.Ct. 267, 271, 9 L.Ed.2d 246 (1962) (Black, J., dissenting).

to identify, in light of the purpose of the particular statute, the most analogous statute of limitations. The courts "have generally concluded that Congress intended that the courts apply the most closely analogous statute of limitations under state law." *DelCostello*, 462 U.S. at 158, 103 S.Ct. at 2287. Sometimes, there is a:

> direct indication in the legislative history suggesting that Congress did in fact intend that state statutes should apply. More often, however, Congress has not given any express consideration to the problem of limitations periods. In such cases, the general preference for borrowing state limitations periods could more aptly be called a sort of fallback rule of thumb than a matter of ascertaining legislative intent; it rests on the assumption that, absent some sound reason to do otherwise, Congress would likely intend that the courts follow their previous practice of borrowing state provisions.

*Id.* at 158–59, 103 S.Ct. at 2287–88. However, state statutes of limitations can sometimes be "unsatisfactory vehicles for the enforcement of federal law." *Id.* at 161, 103 S.Ct. at 2289.

> State legislatures do not devise their limitations periods with national interests in mind, and it is the duty of federal courts to assure that the importation of state law will not frustrate or interfere with the implementation of national policies. "Although state law is our primary guide in this area, it is not, to be sure, our exclusive guide."

*Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 367, 97 S.Ct. 2447, 2454, 53 L.Ed.2d 402 (1977) (quoting *Johnson v. Railway Express Agency*, 421 U.S. 454, 465, 95 S.Ct. 1716, 1722, 44 L.Ed.2d 295 (1975)).

### 2) Section 301 of the LMRA—Hoosier Cardinal and DelCostello

Section 301 of the LMRA establishes a federal forum to resolve suits for violation of contracts between an employer and a labor organization. The LMRA contains no statute of limitations applicable to section 301 actions. Accordingly, in *Hoosier Cardinal*, the Supreme Court, employing the general approach outlined in the foregoing subsection, applied a state statute of limitations.

In *Hoosier Cardinal*, a union brought suit pursuant to section 301 alleging that the company had breached the collective-bargaining agreement by failing to pay accumulated vacation pay. 383 U.S. at 698, 86 S.Ct. at 1109. The Court first considered whether federal labor policy required a uniform statute of limitations for all section 301 actions. After noting that federal labor policy sought to further swift, private resolution of labor disputes in order to preserve the bargaining relationship, the Court concluded that "[f]or the most part, statutes of limitations come into play only when these processes have already broken down. Lack of uniformity in this area is therefore unlikely to frustrate in any important way the achievement of any significant goal of labor policy." *Id.* at 702, 86 S.Ct. at 1111. The Court characterized the section 301 action at issue as "essentially an action for damages caused by an alleged breach of an employer's obligation embodied in a collective bargaining agreement. Such an action closely resembles an action for breach of contract cognizable at common law." *Id.* at 705 n. 7, 86 S.Ct. at 1113 n. 7. The Court held that the timeliness of such a suit is to be determined as a matter of federal law, by reference to the appropriate state statute of limitations. *Id.* at 704–05, 86 S.Ct. at 1112–13. The Court decided that the Indiana six-year statute of limitations governing actions not based on a written contract provided the most appropriate limitations period and was not inconsistent with federal labor policy. *Id.* at 707, 86 S.Ct. at 1114.

In *Hoosier Cardinal*, the Court explicitly noted that other section 301 suits might call for application of other rules on timeliness, *id.* at 705 n. 7, 86 S.Ct. at 1113 n. 7; in *DelCostello*, the Court was confronted with such a situation. The section 301 action in *DelCostello*, involved a suit by an employee "against an employer and a union, alleging that the employer had breached a provision of the collective-bargaining

agreement, and that the union had breached its duty of fair-representation by mishandling the ensuing grievance-and-arbitration proceedings." 462 U.S. at 154, 103 S.Ct. at 2285. The Supreme Court concluded that this type of a section 301 suit should be subject to the six-month statute of limitations contained in section 10(b) of the NLRA. It distinguished the "straightforward" section 301 suit in *Hoosier Cardinal* from the "hybrid" section 301 suit in *DelCostello* in several respects. The Court first noted that *Hoosier Cardinal* did not involve any agreement to submit disputes to arbitration, and that the suit in *Hoosier Cardinal* was brought by the union itself rather than by an individual employee. *DelCostello,* 462 U.S. at 162, 103 S.Ct. at 2289. Second, the suit in *Hoosier Cardinal* did not involve any of the consensual processes that federal labor law is designed to protect. *Id.* at 163, 103 S.Ct. at 2289. By contrast, in *DelCostello,* the plaintiff challenged the outcome of the grievance procedure. Therefore, the contractually created method for private settlement of disputes was directly challenged. *Id.* at 165, 103 S.Ct. at 2291. Finally, unlike the "straightforward" section 301 suit in *Hoosier Cardinal,* which was closely analogous to a common law breach of contract action, the "hybrid" section 301 suit in *DelCostello* had no close analogy in state causes of action. *Id.*

The Court acknowledged that a federal court must often settle for an imperfect match between the interests furthered by the federal cause of action and those interests protected by the state limitations period. *DelCostello,* 462 U.S. at 169, 103 S.Ct. at 2293. However, said the Court, this imprecision need not be tolerated when a federal statute of limitations exists which is designed to accommodate the interests at stake in the particular suit. The six-month limitation period in section 10(b) of the NLRA is a congressionally created limitations period which balances both the "national interest in stable bargaining relationships and finality of private settlements, and an employee's interest in setting aside what he views as an unfair settlement un-

der the collective bargaining system." *Id.* at 171, 103 S.Ct. at 2294 (quoting *United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 70–71, 101 S.Ct. 1559, 1567–68, 67 L.Ed.2d 732 (1981)). It was an appropriate limitation for this "hybrid" section 301 suit which challenged not only the contractual obligations of the company but also questioned the validity of the grievance procedures and the union's relationship with the company.

3) *The Choice between Hoosier Cardinal and DelCostello*

■ *DelCostello* did not signal an abandonment of the general practice established in *Hoosier Cardinal.* The Supreme Court, in *DelCostello,* emphasized that its holding "should not be taken as a departure from prior practice of borrowing limitation periods for federal causes of action, in labor law or elsewhere." 462 U.S. at 171, 103 S.Ct. at 2294. The general norm remains that, unless it is inconsistent with federal law or policy, a federal court will apply the most analogous state limitation period in a section 301 suit. *Id.; Carruthers Ready-Mix, Inc. v. Cement Masons Local Union No. 520,* 779 F.2d 320, 322 (6th Cir.1985); *Derwin v. General Dynamics Corp.,* 719 F.2d 484, 487 (1st Cir.1983). Indeed, this court, in *Plumbers Pension Fund,* established a methodology for determining whether we should depart "from the *longstanding* rule of borrowing the applicable state statute of limitations." 778 F.2d 1266, 1268 (7th Cir.1985) (emphasis supplied).

In *Plumbers Pension Fund,* this court isolated the two factors which the Supreme Court found controlling in selecting the federal limitations period in *DelCostello.* First, federal law provided a more closely analogous limitations period than any state statute. Second, the federal policies at stake and the practicalities of litigation made the federal limitation period a significantly more appropriate vehicle for interstitial law making. 778 F.2d at 1268. Accordingly, recognizing that *DelCostello* is an exception to the general rule, we must

determine whether the factors which distinguish *DelCostello* from *Hoosier Cardinal* require us to apply the six-month federal limitation period in this case. If these factors are not present, then we are bound by the Supreme Court's holding in *Hoosier Cardinal* to apply the most analogous state statute of limitations.

### 4) *Analysis of the Present Case*

Before applying the methodology articulated by this court in *Plumbers Pension Fund* to the facts of this particular case, we pause to note the rather striking similarities between the facts of this case and those of *Hoosier Cardinal.* In both cases, a union filed a "straightforward" section 301 suit alleging that the employer failed to fulfill a contractual obligation to pay the employees certain benefits established by the collective bargaining agreement. The only significant difference between this case and *Hoosier Cardinal* is that the collective-bargaining agreement in this case contained an arbitration clause. Accordingly, in determining whether this case should be governed by the general rule of *Hoosier Cardinal* or by the exception of *DelCostello,* we must give particular attention to the existence of the arbitration clause in the present case. With this point in mind, we proceed to apply the *Plumbers Pension Fund* methodology.

#### a. Is there a closely analogous state cause of action?

The first consideration upon which the Supreme Court relied in selecting a federal limitations period in *DelCostello* was the lack of a closely analogous state cause of action. The Court stressed that the cause of action before it was a "hybrid," *see United Parcel Service,* 451 U.S. at 66, 101 S.Ct. at 1565 (Stewart, J., concurring). Inasmuch as the suit was against the employer, it was a regular § 301 suit alleging breach of a collective bargaining agreement. *DelCostello* at 164, 103 S.Ct. at 2290. Inasmuch as it was a suit against the union for breach of its duty of fair representation, it was grounded in the un-

derlying scheme of the National Labor Relations Act. *Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 909, 17 L.Ed.2d 842 (1967):

> The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both. The suit is thus not a straight-forward breach-of-contract suit under § 301, as was *Hoosier,* but a hybrid § 301/fair representation claim, amounting to "a direct challenge to 'the private settlement of disputes under [the collective-bargaining agreement].' "

*DelCostello,* 462 U.S. at 165, 103 S.Ct. at 2291, (quoting *United Parcel Service,* 451 U.S. at 66, 101 S.Ct. at 1565 (Stewart, J., concurring)). Such a suit, noted the Court, "has no close analogy in state law." *DelCostello,* 462 U.S. at 165, 103 S.Ct. at 2291. It is not like a commercial arbitration since, unlike the party to such a proceeding, the individual worker will not ordinarily be represented by counsel or have some experience in matters of this sort. *Id.* Yet, he "is called upon within the limitations period, to evaluate the adequacy of the union's representation, to retain counsel, to investigate substantial matters that were not at issue in the arbitration proceeding, and to frame his suit." *Id.* at 166, 103 S.Ct. at 2291. Therefore, the short statute of limitations for vacating a commercial arbitration award was inappropriate. Nor could the action be likened to a legal malpractice action since application of such a statute of limitations would "endanger employees' ability to recover most of what is due them." *Id.* at 168, 103 S.Ct. at 2292.

However, like *Hoosier Cardinal*—and unlike *DelCostello*—the basic allegation in this case is that a company breached the collective bargaining agreement. As, in *Hoosier Cardinal,* the interests at stake in this section 301 suit are similar to those that the state legislature would have considered when it established a limitations period for a breach of contract action. The fact that the contract at issue also contained an arbitration clause does not reduce the similarity between the section 301

cause of action and a breach of contract claim. The existence of an alternate forum for the resolution of the dispute does not change the character of the legal claim.

### b. Federal policies and practicalities of litigation

Despite the fact that the section 301 suit in this case is closely analogous to the common law breach of contract action, if federal labor policy or the practicalities of litigation make the federal limitations period significantly more appropriate, we should apply the federal period. The district court concluded that the federal limitations period was significantly more compatible with two important goals of federal labor policy—rapid resolution of labor disputes and a uniform treatment of labor issues. We shall now explore each of these arguments.

Rapid resolution of industrial disputes is, without doubt, a goal of federal labor policy. The use of private dispute resolution mechanisms such as arbitration to achieve quick resolution of such disputes is well-established. *See United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578, 80 S.Ct. 1347, 1350, 4 L.Ed.2d 1409 (1960). Yet, the recitation of these general principles cannot, standing alone, be the basis for concluding that, simply because the six-month federal peri-

od is shorter than any analogous state limitation period, it is necessarily more appropriate. Different degrees of dispatch are necessary or appropriate in different industrial relations contexts. Indeed, parties to a collective bargaining agreement often set forth in the agreement specific time frames for the resolution of disputes.[4] Indeed, in a particular industry or on a particular subject, a six-month statute of limitations may not serve to protect the bargaining relationship or the collective bargaining agreement.[5] A longer limitations period might encourage parties to create and utilize informal methods for resolving labor disputes.

These reasons also lead us to disagree respectfully with the district judge's conclusion that a departure from the general rule of *Hoosier Cardinal*—and the use of the six-month limitations period of section 10(b) of the NLRA—was appropriate because it promoted uniformity in the area of labor law. In *Hoosier Cardinal* the Supreme Court rejected this argument observing that "although a uniform limitations provision for § 301 suits might well constitute a desirable statutory addition, there is no justification for the drastic sort of judicial legislation that is urged upon us." 383 U.S. at 702–03, 86 S.Ct. at 1111–12.[6] In recognizing that "resort to state

---

**4.** We note that, in this case, the parties chose a nine month period for the presentation of grievances.

**5.** We note that, while the dispute in this case may well be subject to the agreement's arbitration clause, cf. *Nolde Brothers, Inc. v. Local No. 358, Bakery & Confectionary Workers Union, AFL–CIO*, 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977); *Graphic Communications Union, Chicago Paper Handler's & Electrotyper's Local No. 2 v. Chicago Tribune*, 794 F.2d 1222 (7th Cir.1986), the bargaining relationship in this case appears to have already broken down before the union filed suit. The parties had failed to reach a new agreement. Therefore, the section 301 suit did not have a direct impact on any of these essential elements of federal labor policy. A shorter statute of limitations would not serve to protect the bargaining relationship or the collective bargaining agreement.

**6.** In *Federation of Westinghouse Independent Salaried Unions v. Westinghouse Electric Corp.*,

736 F.2d 896, 902, the court applied the six-month statute of limitations of § 10(b) of the NLRA to all suits to compel arbitration:

> ... grievances often involve an alleged activity which is also an unfair labor practice over which the National Labor Relations Board has jurisdiction. The Board frequently defers the consideration of such charges to the arbitral forum if it is available. *See Spielberg Mfg. Co.*, 112 N.L.R.B. 1080, 1082 (1955); *Collyer Insulated Wire*, 192 N.L.R.B. 837, 842 (1971). Thus it makes a great deal of sense to have a common statute of limitations for unfair labor practice charges and for suits to compel arbitration.

We respectfully suggest that the mandate of *Hoosier Cardinal* and, indeed, the mandate of *DelCostello* that "resort to state law remains the norm for borrowing of limitation periods" in "labor law or elsewhere" militates against the adoption of such a broad brush approach—at least by judicial hands.

law remains the norm for borrowing of limitations periods," the Court in *DelCostello* confirmed, in our view, that uniformity had not become an overriding consideration in selecting a limitations period in the area of labor law. In *Plumbers Pension Fund*, 778 F.2d at 1269, this court applied an Illinois statute of limitations to a section 301 suit in which a union sought to enforce an arbitration award, despite the fact that selecting a state statute of limitations would not promote national uniformity. We do not believe that a concern for uniformity requires us to reject the state statute of limitations or makes the federal limitations period significantly more appropriate.

Another federal labor policy was at stake in *DelCostello*. The Supreme Court concluded that the far shorter state limitations period did not reflect the "realities of labor relations and litigation," 462 U.S. at 167, 103 S.Ct. at 2292, since it would not "provide an aggrieved employee with a satisfactory opportunity to vindicate his rights under section 301." *Id.* at 166, 103 S.Ct. at 2291. These concerns are not present in this case. First, it is not the "unsophisticated" employee who has filed suit. Second, the state limitations period provides a longer period for the parties to file suit than the federal limitations period.

### 5) *Conclusion*

■ We believe this case is governed by the general rule established by the Supreme Court in *Hoosier Cardinal*. Indiana common law provides, in an action for breach of contract, a closely analogous cause of action to the section 301 suit in this case. Moreover, federal law does not provide a closer analogy than available

state limitations periods. Neither the federal labor policy which favors rapid resolution of labor disputes nor a need for uniformity requires us to disregard the analogous state limitations period. Nor do the practicalities of this litigation make section 10(b) a significantly more appropriate limitations period.

We are bound by the Supreme Court's holding in *Hoosier Cardinal*, to apply the most analogous state limitations period to this section 301 action. Accordingly, we hold that the district court erred when it refused to apply the most analogous state statute of limitations to the section 301 suit in this case.[7]

### III

### *THE APPROPRIATE INDIANA STATUTE OF LIMITATIONS*

■ Having determined that, in this case, there is no reason to depart from the general practice of applying the most analogous state statute of limitations and having characterized the section 301 suit in this case as essentially a cause of action for breach of contract, we must now consider the Indiana statute of limitations on actions for breach of a contract. Indiana has three different limitations periods for breach of contract actions. A twenty-year limitations period governs actions for breach of contracts in writing, Ind. Code § 34-1-2-2(6); a six-year statute of limitations controls actions on contracts not in writing, Ind. Code § 34-1-2-1; and a two-year statute of limitations applies to all actions relating to the terms, conditions and privileges of employment except actions based on a written contract, Ind. Code § 34-1-2-1.5.[8] In *Hoosier Cardinal*, the

---

7. We recognize that several courts, most notably the Third Circuit in *Federation of Westinghouse Independent Salaried Unions v. Western Electric Corp.*, 736 F.2d 896 (3d Cir.1984), and the Ninth Circuit in *Teamsters Union Local 315 v. Great Western Chemical Company*, 781 F.2d 764 (9th Cir.1986), have held that a petition to compel arbitration ought to be subject to the six-month limitation of section 10(b) of the NLRA. This case does not present, at this point in its procedural history, precisely the same situation. We

therefore need not rule on the matter directly. However, as we have indicated elsewhere in this opinion, we have substantial difficulty with the reasoning of those decisions.

8. Ind. Code § 34-1-2-1.5 provides:
   All actions relating to the terms, conditions, and privileges of employment except actions based upon a written contract (including, but not limited to, hiring or the failure to hire, suspension, discharge, discipline, promotion,

Supreme Court rejected application of the twenty-year period for actions based on a written contract because the section 301 action was not based entirely on a written agreement. The Court observed that the separate hiring contract between the employer and each employee was essential for both establishing the actual breach and for determining the extent of damages. 383 U.S. at 705–07, 86 S.Ct. at 1113–14. The Supreme Court selected Indiana's six-year statute of limitations for actions based on contracts not in writing. *Id.*

Subsequent to *Hoosier Cardinal,* the Indiana legislature added the two-year limitations period which specifically covered employment disputes not based on a written contract. We believe that the Indiana two-year statute of limitations is the appropriate limitations period to apply in this case. It is consistent with the Supreme Court's observations in *Hoosier Cardinal,* that this sort of section 301 action is not entirely based on a written contract. 383 U.S. at 706, 86 S.Ct. at 1113. The two-year period is also consistent with the federal labor policy which encourages rapid resolution of labor disputes and the contractual agreement to submit the grievance to arbitration. Although neither the arbitration clause nor federal labor policy requires us to disregard the state statute of limitations, we can consider those factors when choosing among alternative state periods of limitations which could apply to the section 301 action.[9]

demotion, retirement, wages, or salary) shall be brought within two [2] years of the date of the act or omission complained of.

9. Compare *Hoosier Cardinal,* 383 U.S. at 706, 86 S.Ct. at 1113. While rejecting the view that the section 301 suit was based exclusively on the separate contracts, frequently oral, between the employer and each employee, the Supreme Court took into account these separate contracts "in characterizing the nature of a specific § 301 suit for the purpose of selecting the appropriate state limitations provision." *Id.*

10. Although selection of the Indiana two-year statute of limitations differs from the Supreme Court's decision to apply the six-year statute in *International Union, United Automobile Workers*

We hold, therefore, that in section 301 suits such as the one in this case, the state statute of limitations which governs the common law action for breach of contract should apply. When it is Indiana's statutory scheme which will provide the limitations period, then the two-year statute designed for employment disputes not based on a written contract is the most appropriate statute of limitations.[10] Accordingly, we reverse and remand this case to the district court for application of that limitations period to the specific allegations in this case.[11]

REVERSED AND REMANDED.

*v. Hoosier Cardinal Corp.,* 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966), we have no difficulty with application of the two-year statute of limitations in this case. The two-year period was enacted in 1977, after the Court's decision in *Hoosier Cardinal* but seven years before the Union filed suit in this case. We cannot say that we have overruled clear past precedent upon which litigants may have relied or decided an issue of first impression. *See Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 355–56, 30 L.Ed.2d 296 (1971).

11. We express no opinion about the effect that the two-year statute of limitations will have on the Union's complaint in this case. Its application is better left, in the first instance, to the district court.